IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

AARON AUGUSTINE HEREDIA,

        Petitioner,                No. 2:10-cv-00693-TLN-CMK

    vs.

MICHAEL MARTEL

        Respondent.            <u>ORDER</u>

_____/

      This matter is before the Court on Aaron Heredia's ("Petitioner") Motion for Reconsideration of Denial of Certificate of Appealability.  (ECF No. 57.)  Respondent has filed an opposition to Petitioner's motion.  (Opp'n to Mot. For Reconsideration of Denial of Certificate of Appealability, ECF No. 64.)  The Court has reviewed the record and is well apprised of the arguments raised in Petitioner's motion and Respondent's opposition.  For the reasons set forth below, the court DENIES Petitioner's motion.[1]

///

///

///

---

[1] This matter was submitted without oral argument on June 25, 2013. (Minute Order, ECF No. 65); *see also* E.D. Cal. Local Rule 230(g).

I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Bridgette Alvarez and her daughter Alexis were often homeless. In August 2003, Alvarez gave temporary guardianship of her daughter to Petitioner, a man who lived (with his wife and two young children) next door to her father. On the afternoon of October 23, 2003, Alexis suffered severe injuries while she was at home with Petitioner and his children. She was transported to Kaiser Hospital in Vallejo and then to Children's Hospital in Oakland, but she died of her injuries the following day. A felony complaint was filed against Petitioner on October 29, 2003, and, after a preliminary hearing, he was charged with murder (Cal. Pen. Code, § 187, subd. (a)) and assault on a child under age eight causing death (Cal. Pen. Code, § 273ab). On July 18, 2005, the jury found Petitioner guilty of both counts.

Prior to the trial, Petitioner filed a motion in limine to dismiss the case pursuant to *California v. Trombetta*, 467 U.S. 479 (1984), due to the prosecution's failure to preserve Alexis's body for testing by defense experts. An autopsy was performed on October 24, 2003, the afternoon of Alexis's death. According to Petitioner's motion, defense counsel asked the prosecutor assigned to the case to preserve the remains for examination by a forensic pathologist to be retained by the defense on three occasions (November 3, 7, and 10). On November 10, 2003, the Solano County Coroner advised defense counsel that the child's body had been taken to a mortuary. When defense counsel inquired as to the body, a supervisor at the mortuary informed counsel that the remains were scheduled to be disposed of on November 12 or 13, but that they would preserve them if the district attorney requested. The assigned deputy district attorney declined to do so, noting that the brain, eyes and several tissue samples had been preserved for defense examination. Alexis's body was cremated on November 12, 2003.

///

---

[2] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *See id.* These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. (*See* ECF No. 14 at 5−40.)

Petitioner subsequently retained pathologist, Dr. Ophoven, who opined that Alexis may have died from a spinal injury instead of head trauma.  Petitioner thus argued that Alexis's lungs and spinal cord had exculpatory value that should have been apparent at the time of autopsy, and that the prosecution therefore had a duty to preserve this evidence for defense examination.  The trial court denied the motion, concluding the exculpatory value of the body was not readily apparent.  The court also found there was no proof of bad faith by the district attorney in failing to preserve the body.

On March 23, 2010, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising two claims: (1) that the state unreasonably applied the United States Supreme Court standards set forth in *Trombetta*, 467 U.S. 479, and *Arizona v. Youngblood*, 488 U.S. 51 (1988), in upholding the trial court's denial of Petitioner's motion to preserve the victim's body; and (2) that the state court's determination that trial counsel did not render ineffective assistance of counsel by failing to seek a formal order to preserve the victim's spinal cord constituted an objectively unreasonable application of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  (ECF No. 1.)  On February 14, 2013, Magistrate Judge Craig M. Kellison ("MJ") issued his Findings and Recommendations ("F&R"), recommending that the petition be denied on both grounds.  (ECF No. 52.)  On February 27, 2013, Petitioner filed Objections to the Findings and Recommendations.  (ECF No. 53.)  On March 26, 2013, District Judge Garland E. Burrell, Jr. issued an order, adopting the MJ's F&R in full, and denying habeas relief.  Additionally, Judge Burrell declined to issue a Certificate of Appealability ("COA") on either claim.  (ECF No. 55.)  Petitioner filed a timely motion for reconsideration on April 1, 2013.  (ECF No. 57.)  The case was reassigned on April 3, 2013 due to the appointment of District Court Judge Troy L. Nunley, who now presides over this case.  (ECF No. 58.)  Petitioner filed his Notice of Appeal on April 10, 2013.  (ECF No. 59.)

II.     STANDARD

A motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) when filed within 10 days of entry of judgment.

3

*See American Ironworks & Erectors, Inc. v. North American Const. Corp.*, 248 F.3d 892, 898−99 (9th Cir. 2001); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992). A motion to alter or amend judgment under Rule 59(e) tolls the time for a party to appeal. Fed. R. App. P. 4 (a)(4)(A)(iv), and Fed. R. App. P. (a)(4)(B). Therefore, if a party files a notice of appeal during the pendency of a post-judgment motion for reconsideration, the notice of appeal does not become effective until the final disposition of the motion is resolved. Hence, a notice of appeal filed before the disposition of a post-trial tolling motion is simply held in abeyance until the motion is resolved and is therefore sufficient to bring the underlying case, as well as any orders specified in the original notice, to the court of appeals. *See Leader Nat'l Ins. Co. v. Industrial Indem. Ins. Co.*, 19 F.3d 444, 445 (9th Cir. 1994); *Ross v. Marshall*, 426 F.3d 745, 751 (5th Cir. 2005); *United States v. Powers*, 168 F.3d 943, 948 (7th Cir. 1999); *see also* Robert E. Jones et al., *Rutter Group Prac. Guide: Fed. Civ. Trials & Ev.* Ch. 20-L (2012).

Under Rule 59(e), reconsideration is unwarranted in the ordinary case. "[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citations omitted); *see also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School District No. 1J, Multnomah County, Oregon v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* E.D. Cal. Local Rule 230(j) (stating that a party seeking reconsideration must show what "new or different facts or circumstances" which were not previously shown "or what other grounds exist for the motion"). As such, a mere "attempt to reargue the case is not grounds for granting a motion for reconsideration." *Kodimer v. Cnty. of San Diego*, No. 07-CV-2221-BEN (NLS), 2010 WL 2926493, at *1 (S.D. Cal. July 22, 2010) (citing *American Ironworks*, 248 F.3d at 899).

III.   ANALYSIS

Petitioner has not alleged any new evidence or an intervening change in controlling law. Instead, Petitioner contends that the Court committed clear error by not

4

issuing a COA as to his *Trombetta-Youngblood* claim and ineffective assistance of counsel claim. Petitioner cites *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), for the proposition that a petitioner need only show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate for a COA to be issued. Although Petitioner has stated the correct standard for issuance of a COA, this Court must apply the higher standard governing a motion to reconsider, and thus Petitioner must show clear error to succeed. *See School District No. 1J, Multnomah County, Oregon*, 5 F.3d at 1263.

### A. Petitioner's *Trombetta-Youngblood* Claim

Under *Trombetta*, the government has a duty to preserve evidence that might be expected to play a significant role in a suspect's defense. 467 U.S. at 488. For the duty to be triggered, the evidence must possess a readily apparent exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *See id.* at 489. "The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation." *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (quoting *United States v. Hernandez*, 109 F.3d 1450, 1455 (9th Cir. 1997)). Absent a showing of bad faith, a "'failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" *Id.* at 986−87 (quoting *Youngblood*, 488 U.S. at 58).

At issue in this case is the victim's spinal cord, which Petitioner contends could have been examined for evidence, which may have supported his theory that Alexis's death was caused by an accidental fall and not abuse. In denying Petitioner's claim, the Court noted that the state court correctly found that substantial evidence within the record supported the conclusion that the exculpatory value of Alexis's spinal cord and lungs was not apparent before her body was cremated.

> Alexis had no signs of brain activity when she arrived at Children's Hospital, and all of the physicians who treated her believed she had suffered a massive brain injury. The medical examiner found indications of blunt force head trauma during the autopsy and concurred with the treating doctors' conclusion that the child died from a brain injury. The examiner noted, "there was no

clinical suspicion of any neck injury," and a CT scan showed no evidence of an injury to the spinal cord. Given the consistent opinions of the treating doctors and medical examiner that Alexis died of a head injury, the exculpatory value of other parts of her body was not so apparent that due process required the state to preserve them . . . At most, the physical evidence sought by the defense was potentially useful, in that "it could have been subjected to tests, the results of which might have exonerated the defendant." (citation omitted). Again, however, substantial evidence supports the trial court's finding that the prosecution acted in good faith. Although defense counsel repeatedly requested that the body be preserved, it appears from the record that counsel had not yet retained a pathologist to examine the body when these requests were made. Nor did [Petitioner] seek a court order to preserve the remains until he could retain such an expert . . . The prosecutor assured defense counsel that the brain and eyes and tissue samples preserved from the body would provide adequate material for examination by a defense pathologist. **The defense did not request that specific other materials be preserved, and <u>at the time</u> – before defense experts pointed out possible causes of death other than brain injury – there was no reason for the prosecutor to think preservation of additional body parts was necessary.** Accordingly, there was no due process violation, and the trial court properly denied Heredia's motion to dismiss.

(ECF No. 52 at 13 (quoting ECF No. 14 at 21−22) (emphasis added).) Petitioner now offers affidavits of defense experts opining that "there was insufficient evidence that blunt force trauma caused Alexis's death and that there was a significant possibility that spinal cord injury was a more plausible cause of death." (ECF No. 57 at 6.) However, none of this information was available to the prosecution at the time that the decision was made. *See Phillips v. Woodford*, 267 F.3d 966, 986−87 (9th Cir. 2001) (holding that to make a colorable showing of bad faith a petitioner must present evidence that the exculpatory value was apparent prior to destruction of the evidence). Thus, Petitioner cannot succeed in his claim.

### B. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner contends that the Court erred in failing to issue a COA as to his ineffective assistance of counsel claim because his counsel's failure to request a court order to preserve the remains constituted incompetent conduct and resulted in prejudice. (ECF No. 57 at 7.)

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed Petitioner must show that (1) considering all the circumstances, counsel's performance fell below an objective standard of reasonableness and (2) Petitioner was prejudiced by counsel's performance. *Id.* at

688, 692. In determining whether counsel's performance was deficient under the first prong of *Strickland*, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). Under the second prong, prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

Here, Petitioner cannot show prejudice because he cannot demonstrate that had counsel made a formal motion that it would have been granted or that had such a motion been granted and the evidence preserved, that the jury would not have rejected this evidence in favor of the prosecution's experts. Moreover, because the exculpatory nature of the evidence was unknown at the time that the body was cremated, it is unlikely that any formal motion to preserve the body would have been granted. Accordingly, this Court does not agree with Petitioner's contention that his counsel acted incompetently in failing to seek a formal order. Thus, Petitioner has failed to meet either prong under *Strickland*.

IV.   CONCLUSION

For the foregoing reasons, Petitioner's Motion for Reconsideration (ECF No. 57) is hereby DENIED.

IT IS SO ORDERED.

DATED:   July 12, 2013

Troy L. Nunley
United States District Judge

7